

**EXHIBIT 1**

# COMPLAINT OF DISCRIMINATION IN THE FEDERAL GOVERNMENT
(This form is subject to the Privacy Act of 1974)
(See Page 3 for Privacy Act Statement and Restrictions - Please type or print)

**FOR AGENCY USE**

**1. FULL NAME OF COMPLAINANT** (Last, First, Middle Initial)
MCMILLAN, TIFFANY, L

**2. TELEPHONE NUMBER** (Include Area Code)

**3. ADDRESS** (Street, City, State, and ZIP Code)

a. HOME

b. OFFICE ( 636 ) 321-5402

**4. FEDERAL OFFICE YOU BELIEVE DISCRIMINATED AGAINST YOU**
(Prepare a separate complaint form for each office which you believe discriminated against you.)

**5. ARE YOU NOW WORKING FOR THE FEDERAL GOVERNMENT?**
(If answer is "Yes" complete a, b, and c below.)
[X] YES [ ] NO

a. NAME OF OFFICE THAT YOU BELIEVE DISCRIMINATED AGAINST YOU
FINANCIAL MANAGEMENT

a. NAME OF AGENCY WHERE YOU WORK
NATIONAL GEOSPATIAL-INTELLIGENCE AGENCY

b. ADDRESS OF OFFICE (Street, City, State, and ZIP Code)
3838 VOGEL ROAD
ARNOLD, MO 63021

b. ADDRESS OF YOUR AGENCY (Street, City, State, and ZIP Code)
3838 VOGEL ROAD
ARNOLD, MO 63021

c. NAME AND TITLE OF PERSON(S) YOU BELIEVE DISCRIMINATED AGAINST YOU (If you know)
GREG THIBBEAU
NICHELLE GARFORD

c. TITLE AND GRADE OF YOUR JOB
BRANCH CHIEF
PAYBAND 4

**6. ELECTION OF REPRESENTATION** [ ] ATTORNEY [ ] NON-ATTORNEY [X] NO REPRESENTATION

a. NAME OF REPRESENTATIVE (If applicable)

b. ADDRESS (Include ZIP Code)

c. TELEPHONE NUMBER (Incl. area code)  d. FAX NUMBER (Incl. area code)  e. E-MAIL ADDRESS

**7. DATE ON WHICH MOST RECENT ALLEGED DISCRIMINATION TOOK PLACE** (YYYYMMDD)
20180124

**8. CHECK BELOW WHY YOU BELIEVE YOU WERE DISCRIMINATED AGAINST**

| | |
|---|---|
| a. RACE (If so, state your race) | |
| b. COLOR (If so, state your color) | |
| c. RELIGION (If so, state your religion) | |
| d. NATIONAL ORIGIN (If so, state your national origin) | |
| ✓ e. SEX (If so, state your sex) | Female |
| f. AGE (If so, state your age) (See Note 1) | |
| g. DISABILITY (If so, state whether mental or physical) | |
| ✓ h. SEXUAL HARASSMENT (If so, state your sex and the sex of the person you believe harassed you) | female, male |
| i. REPRISAL FOR PREVIOUS EEO ACTIVITY (If so, when) | |
| j. GENETIC INFORMATION | |
| k. PREGNANCY | |

Note 1: Complaints of discrimination because of age apply only to employees or applicants who were at least 40 years of age at the time the discriminatory action is alleged to have occurred.

**9. EXPLAIN IN SPECIFICS HOW YOU BELIEVE YOU WERE DISCRIMINATED AGAINST** (treated differently from other employees or applicants) DUE TO YOUR RACE, COLOR, RELIGION, NATIONAL ORIGIN, SEX, AGE, PREGNANCY, GENETIC INFORMATION, DISABILITY, OR REPRISAL (For each allegation, please state to the best of your knowledge, information and belief what incident occurred and when the incident occurred. If you need more space, continue on another sheet of paper.)

See attached

Exhibit A-1
Page 2 of 9

DD FORM 2655, JUN 2012   PREVIOUS EDITION IS OBSOLETE   Page 1 of 3 Pages

| 10. I HAVE DISCUSSED MY COMPLAINT WITH AN EQUAL EMPLOYMENT OPPORTUNITY COUNSELOR (See instructions). | 11. NAME OF COUNSELOR (If applicable). |
|---|---|
| ☒ YES   ☐ NO | A. VANESSA COOPER |

12. HAVE THE ISSUES IDENTIFIED IN BLOCK 9 BEEN APPEALED TO THE MERIT SYSTEMS PROTECTION BOARD (MSPB) OR FILED UNDER A UNION NEGOTIATED GRIEVANCE PROCEDURE?   ☒ NO   ☐ YES (If Yes, complete 12.a., b., and p. below)

| a. (X one)                              | b. DATE FILED (YYYYMMDD) | c. MSPB OR UNION DOCKET NUMBER. (If known). |
|---|---|---|
| ☐ MSPB   ☐ UNION NEGOTIATED GRIEVANCE. |  |  |

13. WHAT RELIEF ARE YOU SEEKING TO RESOLVE THIS COMPLAINT? (State specific corrective action desired for each allegation.)

1. Be removed from Nichelle Gafford's chain of command.
2. Reimbursement for medical/psychologists copays.
3. Restored leave for medical/psychologist appointments.
4. Compensation for emotional harm, $100,000.00.

14. LIST NAME(S) OF WITNESS(ES) AND BRIEFLY STATE WHAT INFORMATION WITNESS MAY CONTRIBUTE TO THE INVESTIGATION OF YOUR COMPLAINT.

see attached

Exhibit A-1
Page 3 of 9

| 15. SIGNATURE OF COMPLAINANT | | 16. DATE OF THIS COMPLAINT. (YYYYMMDD) |
|---|---|---|
| Tiffany McMillan | Digitally signed by Tiffany McMillan Date: 2018.04.07 20:59:36 -05'00' | 20180407 |

DD FORM 2655, JUN 2012                                                                                                      Page 2 of 3 Pages

## PRIVACY ACT STATEMENT

**AUTHORITY:** 10 U.S.C. 136; 20 U.S.C. 791, 792, 793, and 795; DoD Directive 1440.1; and E.O. 12106.

**PRINCIPAL PURPOSE(S):** To establish case records and document the counseling, investigation, and adjudication of complaints of employment discrimination brought by applicants and current and former DoD employees against the DoD.

**ROUTINE USE(S):** Records may be provided to EEO officials, hearing examiners, investigators and arbitrators, or by representatives of the Equal Employment Opportunity Commission and the courts concerning the complaint and appeal. The Blanket Routine Uses found at http://dpcld.defense.gov/privacy/SORNs/blanket_routine_uses.html apply to these records. The specific routine uses found at http://dpcld.defense.gov/privacy/SORNs/gov/EEOCGOVT-1.html also apply to these records.

**DISCLOSURE:** Voluntary. However, if the individual does not furnish the information requested, processing the complaint may be delayed or impaired.

## READ INSTRUCTIONS CAREFULLY

This form should be used only if you, as an applicant for Federal employment or a Federal employee, think you have been discriminated against due to race, color, religion, sex, national origin, age, pregnancy, genetic information, disability, or reprisal by a Federal agency and have presented the matter for informal resolution to an Equal Employment Opportunity Counselor within 45 calendar days of the date the incident occurred or, if a personnel action, within 45 calendar days of its effective date.

Your complaint must be filed within 15 calendar days of the date of your final interview with the Equal Employment Opportunity Counselor. If the matter has not been resolved to your satisfaction within 30 calendar days of your first interview with the Equal Employment Opportunity Counselor and the final counseling interview has not been completed within that time, you have the right to file a complaint at any time thereafter up to 15 days after the final interview.

These time limits may be extended if you show that you were not notified of the time limits and were not otherwise aware of them, or that you were prevented by circumstances beyond your control from submitting the matter within the time limits, or for other reasons considered sufficient by the agency.

If you need help in the preparation of your complaint, you may contact the Equal Employment Opportunity Counselor who provided you with your initial counseling, or you may secure help from a representative of your choice.

For complaints filed against the Immediate Office of the Secretary of Defense, the Joint Staff and all activities receiving administrative support from Washington Headquarters Services, the individuals designated to receive complaints are the Equal Employment Opportunity Officer or the Director, EEO, Office of the Secretary of Defense. Complaints generated within agencies outside the above designated activities must be filed with that agency's individual designated to receive complaints of discrimination, i.e., the Chief EEO Counselor.

You may have a representative of your own choosing at all stages of the processing of your complaints.

You will have an opportunity to talk with an investigator and present all the facts which you believe show discrimination. The investigator will not be under the jurisdiction of the head of that part of the agency in which the alleged discrimination took place.

After the investigation of your complaint has been completed, you will be furnished a copy of the Report of Investigation. You will be given an opportunity to request a hearing, which will be conducted by an Administrative Judge assigned by the Equal Employment Opportunity Commission (EEOC). The hearing will be held at a convenient time and place. At the hearing, you may present witnesses and other evidence on your behalf.

The final decision (in writing) will be made by the head of the agency or his or her designee. If a hearing is held on your complaint, the head of the agency or the designee will review the decision recommended by the Administrative Judge before making a final decision, and will furnish you with a transcript of the hearing, a copy of the findings, analysis, and recommended action of the Administrative Judge, along with the agency's final decision letter.

If you are not satisfied with the final agency decision, you have the right to appeal that decision within 30 calendar days after receipt to the Equal Employment Opportunity Commission, Office of Federal Operations, P.O. Box 77960, Washington, DC 20013.

If your complaint is based on race, color, religion, sex, national origin, pregnancy, genetic information, disability, or reprisal, you may file a civil action in an appropriate U.S. District Court within 90 days of receipt of the agency's decision or, if you elect to file an appeal with the Commission, you may still file a civil action in a Federal District Court within 90 days of the Commission's decision if you are dissatisfied with the decision.

If your complaint is based on race, color, religion, sex, national origin, pregnancy, genetic information, disability, or reprisal, you may file a civil action in an appropriate U.S. District Court if you have not received a final agency decision within 180 days of filing your complaint with the agency, or if you have not received a final Commission decision within 180 days of filing your appeal with the Commission's Office of Federal Operations.

Exhibit A-1
Page 4 of 9

DD FORM 2655, JUN 2012

Page 3 of 3 Pages

UNCLASSIFIED

6 February 2018

MEMORANDUM FOR    OFFICE OF DIVERSITY MANAGEMENT AND EQUAL EMPLOYMENT OPPORTUNITY (ODE)

SUBJECT:    Complaint of Harassment, Retaliation, and Hostile Work Environment Statement

1. I am subject to a discriminatory hostile work environment at the Office of Finance, Financial Management Directorate, Arnold, MO. The environment is one of harassment by my immediate management that interferes with my ability to perform my job. Specifically, Nichelle Gafford, Director of Finance, and Greg Thebeau, Chief of Accounts & Fiscal Control Division are causing this environment.

2. This situation began in July 2017. Mr. Thebeau, my immediate supervisor, and I both attended the same Fiscal Law course in Seattle, WA. During the course of this trip, Mr. Thebeau began to show unwanted interest in me beyond the course of work. From July 2017 to October 2017 Mr. Thebeau started sending me text messages to my private cell phone, trying to start a dialogue of a personal nature (enclosure 1).

3. Mr. Thebeau tried several times to arrange trips with just the two of us to NGA Campus East (NCE):

    3.1 11-18 October 2017 – He continually asked me to travel with him to the NEOS Supervisor Luncheon scheduled for 30 October 2017. He told me that going with him would help me get a promotion, and we would have free drinks at the hotel. I felt worry by telling my supervisor no and I was too insecure to boldly stand up for myself and confront his behavior. I declined the trip and provided an excuse each time I told him no.

    3.2 17-26 October 2017 – He asked me about my upcoming trip for Supervisor Training scheduled for 11-13 December 2017. He stated he needed the training and maybe he would travel with me. I told him he could not go because he was needed in the office for staff coverage. The other two branch members were traveling with me. He told me he would make them go another time so that he could go with me instead.

4. Mr. Thebeau waited after work hours to walk out of the building with me, tried to have me meet him after work hours for drinks, and called me on my cell phone after work hours to discuss non-work related topics:

    4.1 24 October 2017 – After leaving work he called my personal cell phone. He wanted me to stop and have drinks with him alone. I declined and several times tried to wrap up the conversation, but he kept me on the phone until finally I told him I was home and I had to go.

    4.2 25 October 2017 – Again, after leaving work he called my personal cell phone. I did not answer. He sent me a text and called me again. I still did not answer. He sent me another text saying I must have had a date because I combed my hair and that is why I didn't answer his call.

5. Beginning on or about 17 October 2017 – I started to increasingly avoid and ignore Mr. Thebeau hoping he would leave me alone. I was fearful to be in conflict with my supervisor. I felt intimidated and scared to confront his advances and behavior. I stopped answering his text messages on 27 October 2017.

6. 30 October 2017 was Mr. Thebeau's last text to me. On 31 October Mr. Thebeau started pressuring me on work, not because I was not performing, but because I rejected his advances. He was pressing me on tasks that were not in alignment with month-end close requirements.

UNCLASSIFIED

Exhibit A-1
Page 5 of 9

UNCLASSIFIED

7. On 6 November 2017, I spoke to Ms. Gafford, SES, Director of Finance, regarding Mr. Thebeau's behavior toward me and that I was considering his actions as sexual harassment. While Ms. Gafford originally appeared sympathetic, her demeanor and interactions with me quickly became aggressive and accusatory.

    7.1. Harassment over Approved Leave and Travel Hours – I was TDY to NCE for Supervisor Training 11-13 December 2017, with travel back to NCW 14 December. I requested, and Mr. Thebeau approved, 1-day leave while at NCE (14 Dec). This approval extended my time in the Washington DC area by 24 hours, with travel back to NCW 15 December.

- 15 December 2017 – Ms. Gafford called me on my personal cell phone and accused me of being absent without leave. Upon return to NCW, Ms. Gafford issued me a written reprimand (enclosure 2), though I had obtained supervisory approval.
- 18 December 2017 – During another contested meeting with Ms. Gafford and Danny Watson, Deputy Director of Finance, Ms. Gafford acknowledged that I had permission and properly informed my team. Ms. Gafford then steers the conversation to a new topic and says we need to discuss my work schedule, specifically a new start time of 8am. I began to explain why I would not be able to meet this requirement. Ms. Gafford cut off my explanation and would not allow me to speak. She instructed me that my new start time would be effective 7 January 2018.
- 21 December 2017 – Mr. Thebeau instructs me to change my time sheet to reflect 3 hours of personal leave for 15 December, though the actual travel time was 7 hours due to a delayed flight (enclosure 3). Other FM employees on the same flight were not instructed to do so. Both the absent without leave issue and time reporting issue were resolved after days of much angst. The experience of having a senior executive personally calling me and accusing me of wrong doing, and then issuing me a reprimand without understanding that all the actions were approved by the supervisor and in accordance with rules and regulations creates a hostile work environment.

    7.2 29 December 2017 Removed from Duties – I returned to work after several days of illness 26-28 December. Mr. Watson notified me that during my absence, Ms. Gafford removed me from primary duties and instructed Ms. Christa Rosas, Chief of Employee Pay, to direct the month-end/quarter close and the status of future months is unknown.

- 2 January 2018 – Ms. Gafford stated she was concerned for the training of my staff, and at the time she made her decision, she did not understand that month-end close tasks do not begin until the first of month. As of November 2017, 4 of my 5 staff were new and this was their first month-end/quarter close. I was fully prepared and capable to direct the month-close and train the staff. Ms. Gafford stated she did not have confidence in me and accused me of not performing. I explained during November and December, it required time for new staff to request and obtain numerous system accesses and time for me to prepare the staff desktop books. Additionally, the branch was closed for 3 holidays, and I was required out of the office for approximately 2 weeks for training, 1 week for pre-approved leave, and 1 week for illness. Ms. Gafford did not appear receptive and accused me of making excuses, although there was not ample opportunity to achieve the level of her expectations within this short timeframe.

    7.3 4-5 January 2018 – I received an email from Ms. Rosas and Mr. Thebeau directing me to work directly with Mr. Thebeau, in contradiction to Ms. Gafford's instruction that I received during the 6 November 2017 meeting. It appeared Ms. Gafford effectively removed herself as an acting intermediary

UNCLASSIFIED

Exhibit A-1
Page 6 of 9

UNCLASSIFIED

between Mr. Thebeau and me. I requested to report to another supervisor. Ms. Gafford refused stating there was nothing she could do, that Mr. Thebeau is my supervisor and I will report directly to him. She then accused me of having a master plan to have Mr. Thebeau moved to another Division (notes at enclosure 4). It was immediately after this conversation that I received notice that I must change my work hours starting 7 January (enclosure 5). NGA policy is to allow employees flex working hours. One of the reasons I came to NGA was because of the benefits such as flexible working schedules. While flexible working schedules are routine at NCE to accommodate FM personnel, recently it has been limited to only some in FM at NCW. As a single parent with joint custody, it is virtually impossible for me to meet this new requirement. I can only conclude that I am being singled out as retribution and retaliation for reporting Mr. Thebeau's actions towards me. I once again explained via email my circumstances and that I was not able to accommodate their new work schedule. I was then called in to Ms. Gafford's office forced to explain in detail to her and Mr. Thebeau my personal circumstances including child custody arrangements, lack of child care options, ex-husband's custody status and non-willingness to cooperate (notes at enclosure 4). During what felt like an interrogation, I was ridiculed by Ms. Gafford telling me that I "was an adult" and that I "need to act like one". If I did not report at their demanded time, that I would be considered absent without leave and that there would be disciplinary action taken against me. Ms. Gafford stated that "a true single parent gets others to help." I stated that I did not have a support system like that. She replied that she did not believe me and that I would be demoted if I did not comply. After enduring a series of threats if I did not comply, Ms. Gafford finally relented to the fact that I had no choice in the matter, allowing my current work schedule, and that she would address the "problem" at a later date.

8. Lastly, I requested to be moved from my current position to another supervisor other than Mr. Thebeau. Ms. Gafford acknowledged a problem with Mr. Thebeau stating that there were several other complaints against him, but would not allow me to move until April, keeping Mr. Thebeau as my supervisor. I am aware of two other complainants and have heard there are as many as six.


Tiffany L. McMillan


Exhibit A-1
Page 7 of 9

UNCLASSIFIED

Witnesses

Danny Watson – Witnessed Nichelle Gafford's actions of misconduct towards me, as he was present in meetings and conversations. He has information of numerous complaints made by other females in the office, regarding Mr. Thebeau's behavior.

Jim Chapman – Witnessed my mental and emotional angst.

Tanya King – Sat outside Ms. Gafford's office and was her admin assistant. She heard meetings and conversations. She once stopped me in the hall to tell me she was praying for me, because of the things she heard and was aware of.

Karen (Garland) Vidra – Sat outside Mr. Thebeau's office and was present the night Mr. Thebeau asked me to go with him to a private room. And a witness to the decline of my emotional and mental wellness as a result of Ms. Gafford's and Mr. Thebeau's misconduct towards me.

TJ Moore – Witnessed Mr. Thebeau's outbursts in two meetings. Witnessed a branch meeting with my subordinates where Mr. Thebeau slandered my competence, management skills, and work performance.

Mitzi Cotner, Lena Hampton, Shea West, Jessica Davis, Lori Watson – My branch witnessed yelling by Ms. Gafford when she prevented me from performing their training. This group also witnessed Mr. Thebeau's outbursts in two meetings.

Mitzi Cotner – Witness to the decline of my emotional and mental wellness as a result of Ms. Gafford's and Mr. Thebeau's misconduct towards me.

Exhibit A, 1
Page 8 of 9

## Cooper Anita -Vanessa- V Ms NGA-ODED USA CIV

| | |
|---|---|
| From: | Tiffany McMillan <tiffmac2@gmail.com> |
| Sent: | Saturday, April 7, 2018 9:12 PM |
| To: | Cooper Anita -Vanessa- V Ms NGA-ODED USA CIV; Tiffany McMillan |
| Subject: | [Non-DoD Source] NGA-0016-2018 McMillan DD2655 |
| Attachments: | dd2655.pdf; Statement.docx; Witnesses.docx |

Please see attached forms.

Tiffany McMillan

Exhibit A-1
Page 9 of 9