UNCLASSIFIED

EXHIBIT 2

16 October 2018

MEMORANDUM FOR    OFFICE OF DIVERSITY MANAGEMENT AND EQUAL EMPLOYMENT OPPORTUNITY (ODE)
SUBJECT:    Addendum to Complaint of Harassment, Retaliation, and Hostile Work Environment Statement

1. On April 7, 2018, I filed a formal complaint ("Complaint") with the Office of Diversity Management and Equal Employment Opportunity (ODE) Office. This memorandum serves as an addendum to include claims of new incidents that occurred after the April 7th filing and are related to my complaint.

2. NGA terminated Mr. Greg Thebeau's employment.

    2.1  20 March 2018 – I was notified by Ms. Gafford and a Human Development (HD) representative that Mr. Greg Thebeau was removed from his position and no longer employed at NGA.

    2.2  23 March 2018 – Meeting with Mr. Danny Watson:

- Mr. Watson stated that Mr. Thebeau was no longer with NGA, however I was not returning to the Accounting Branch for three reasons: 1) "We can't give the impression that he is why you were moved in the first place. If you returned, it would be obvious." 2) "Vendor Pay can better accommodate your morning schedule". 3) "And other reasons that can't be said".
- Mr. Watson told me I was not the only person to complain about Mr. Thebeau's inappropriate behavior, stating that there are six other females who complained.
- Mr. Watson told me that Mr. Thebeau's employment was officially terminated for performance issues during his probationary period, not for his inappropriate behavior.

3. 25 July 2018 – Discussion with Ms. Nicole Petti. I met Ms. Petti in a chance meeting in the lobby of the Arnold facility. During our discussion, Ms. Petti informed me that she left FMF because she experienced unwanted advances and inappropriate actions from Mr. Thebeau. Though she reported the incidents to Ms. Gafford, Ms. Gafford did not properly address or prevent the behavior. Ms. Petti told me that she is aware of an SI official who has information related to similar complaints reported against Mr. Thebeau at his previous employing agency, USDA. Therefore, Ms. Petti can substantiate inappropriate behavior by Mr. Thebeau and management's consistent failure to address the inappropriate and abusive behavior. The resulting hostile work environment drove Ms. Petti to seek a position outside FMF.

4. Denied Promotion as Retaliation - I was the most qualified applicant for the developmental position of Division Chief, Accounts & Fiscal Control Division, and was denied the position as retaliation for my complaint.

    4.1  24 May 2018 – I applied for the vacant Pay Band 5 (Developmental) position located within the FMFA Division. There was only one other applicant, the FMFO Branch Chief of Civilian Pay and Travel. I was the most qualified based on my technical experience, supervisory/leadership experience, and being uniquely advantaged by successfully performing the job in an acting capacity for over a year. This is evidenced in my excellent rated annual reviews and performance awards received during the time period.

    4.2  26 July 2018 – Ms. Gafford and Ms. Licklider called me to Ms. Gafford's office. Ms. Gafford notified me that I was not selected for the position. She said the panel's feedback for me was I "just need more supervisor time". I asked if my supervisor experience prior to NGA was considered. Ms. Gafford said

UNCLASSIFIED

she was not on the panel, and she repeated several times that she "recused herself" and was "not involved in the whole process for appearance to be fair." Ms. Gafford's comments were odd and I found it strange that Ms. Gafford, not involved in the selection process, was performing the panel notification and feedback session which is typically performed by the panel chair.

    4.3   08 August 2018 – I contacted the panel chair, Mr. Chris Hathaway, for the official panel feedback. Mr. Hathaway provided very positive feedback regarding my package and said he was very impressed. It was clear I could do the job. Mr. Hathaway stated that Mr. Danny Watson, Deputy to Ms. Gafford, directly instructed him to focus on leadership, and that was the deciding factor for the selection. In other words, Mr. Watson directed the panel to disregard my superior technical skills outlined in my ITP – where I clearly excelled compared to the other candidate, regardless of the fact that job is a highly technical position. After speaking with Mr. Hathaway, it was clear Mr. Watson acted as Ms. Gafford's agent and that his instruction unfairly biased the panel's selection.

5.   Continued harassment over work hours (continued from Complaint paragraph 7.3) – 4-5 January 2018, Ms. Gafford stated she would address the "problem" [referring to my work schedule] at a later date.

    5.1   07 August 2018 – As she warned in January 2018, Ms. Gafford sent an email (Enclosure A1) to all of FMF stating she was implementing core hours for a 6-week timespan, using the guise of year-end related work requirements. As a Chief, this required me to arrive at 8am and non-supervisors were allowed to arrive by 9am.

    5.2   08 or 09 August 2018 – Meeting with my supervisor regarding Core Hours. I spoke with Mr. Eric Bockhorn regarding the new core hours requirement. He stated he was somewhat aware of my situation and asked if the hours would be a problem for me. I explained I would have a problem on days that I have my children. He said that Ms. Gafford issued the email while he was out of the office and did not ask him for his input to the requirement. Mr. Bockhorn said he would speak with Ms. Gafford on my behalf, however he is aware that she feels strongly about enforcing it. I asked Mr. Bockhorn what would happen if I was unable to arrive by 8am. He will contact HD to see how they have handled situations like mine in the past and also inquire about the disciplinary process and timeline.

    5.3   09 August 2018 – I contacted HD regarding my situation. She said in her experience the issue is simply worked out with the supervisor. She consulted with Policy and Civilian Hours, but referred me to the Culture of Respect Hotline as a possible solution. She said Ms. Gafford has the authority to set the core hours, however she questioned whether it contradicted the spirit of NGA's culture and flexible schedules for work/life balance.

    5.4   16 August 2018 – I very briefly spoke with a Culture of Respect representative who stated Ms. Gafford has the authority to require the hours.

    5.5   16 August 2018 – Meeting with Mr. Eric Bockhorn. I told Mr. Bockhorn I spoke with HD and the Culture of Respect and both were unable to help. Mr. Bockhorn said he spoke with HD and also Ms. Gafford and wanted to meet with me before he sent me a related email. He spoke with Ms. Gafford regarding my situation and she is enforcing the hours and his hands are tied. He said HD isn't going to go against Ms. Gafford. She wouldn't make an exception for me, or she would have to make an exception for everyone. Mr. Bockhorn provided NGA's Table of Offenses and Penalties, section 8b for Defiance and Disregard of Directive. He showed me the first offense will result in a Letter of Reprimand, the second offense will result in a one-day suspension, and the third offense will result in removal. He further explained that all offenses indicate "up to removal" and I would not be guaranteed to progress through each numbered offense.

UNCLASSIFIED

5.6  20 August 2018 – Meeting with Mr. Eric Bockhorn. I met with Mr. Bockhorn to provide an update of my situation. I reiterated that I would do what I could to meet the 8am arrival time. I enrolled my youngest in the elementary school before care program. However, the middle school does not offer a before school program and would not allow student drop off before 7:45am. I told Mr. Bockhorn I could arrive by 8:30am. I asked if he would approve me to use leave for the 30 minute difference at 8am-8:30am. As, per Ms. Gafford's email implementing the core hours (Enclosure A1), the Division Chief's retained discretion to authorize leave requests. Mr. Bockhorn said he would speak to Ms. Gafford.

5.7  21 August 2018 – Meeting with Mr. Bockhorn. Mr. Bockhorn said he met with Ms. Gafford and she planned to meet with the PB4/PB5 supervisors to clear up confusion regarding her email and clarify the core hours policy. He instructed me the meeting was not regarding my personal situation. I asked Mr. Bockhorn if he knew why Ms. Gafford was implementing cores hours. He stated it is her reaction to how things went last fiscal year end; that some people weren't here and some people left when they weren't supposed to. Mr. Bockhorn said core hours meant everyone needs to be here until 3pm.

5.8  21 August 2018 – Meeting with Ms. Gafford and PB4/PB5 Supervisors. There was much discussion among the PB5 supervisors whether to allow staff to participate in the advantage fitness program (AFP). I did not participate in the debate, as my staff and I very rarely participate in AFP and it would not be an issue during year end. Ms. Gafford went around the room to get a vote from all supervisors. When called on for my vote, I smiled and joked that I was going to stay out of this one (laughed). Ms. Gafford scorned me in her response "no, you have to separate your personal from professional".

5.9  21 August 2018 – Email from Ms. Gafford to PB4/PB5 Supervisors (Enclosure A2). Ms. Gafford emails supervisors.

5.10  21 August 2018 – Email from Ms. Gafford to FMF (Enclosure A3). Ms. Gafford emails FMF staff.

5.11  22 August 2018 – Email from Mr. Bockhorn (Enclosure A4). Mr. Bockhorn sends me the email he referred to sending me during our 16 August 2018 meeting (see 5.5 above). Core hours were not effective until September 2nd, however Mr. Bockhorn issues me a written warning that my 1st offense will be a written reprimand. Everyone else in FMF, although not notified, would be allowed a verbal warning for the 1st violation of not adhering to core hours. I did not receive the same treatment. I was reprimanded and received written warning 11 days before the policy was effective.

5.12  24 August 2018 – Email to Mr. Bockhorn (Enclosure A5). I informed Mr. Bockhorn of my intent to adhere to the core hours and updated him on my situation.

5.13  16 October 2018 – Meeting with Mr. Bockhorn. Mr. Bockhorn notified me that Ms. Gafford is decided to implement core hours indefinitely. He also notified me of my options: (1) be demoted to a PB3 Accountant position, (2) arrive to work by 8am, or (3) they will begin the disciplinary process. If I chose to be demoted to PB3 Accountant, I would be reassigned back to the Accounting Branch where I was removed from my duties on 12/29/2017 (see Complaint 7.2), and told I could not return on 3/23/2018 (see 2.2 above). Mr. Bockhorn said Ms. Gafford is not willing to make an exception for me because she would have to make an exception for everyone. He said the reason is that Ms. Gafford got burned when she made exceptions for some and not others when she first got to NGA [2017]. Mr. Bockhorn said he wouldn't mind working with me [my schedule], however he is being scrutinized by Ms. Gafford. He anticipates that Ms. Gafford will send an official policy email to FMF within a week or two.

- There is no mission requirement for core hours. Every other area in FM is allowed to have a flexible work schedule and no other area in FM requires "core hours".

3

UNCLASSIFIED

- Mr. Bockhorn's statement of Ms. Gafford "getting burned" is in direct reference to section 7.3 of my Complaint. Ms. Gafford targeted me in January 2018 and singled me out regarding my work schedule.

7. Harassment on close-out rating and review – 10-11 September 2018, I met with Mr. Watson to discuss my performance rating and review for the close-out period 10/1/17-3/31/2018. Mr. Watson's write-up was inconsistent with the rating. He told me that Ms. Gafford lowered his scoring. Mr. Watson told me Mr. Bockhorn spoke with him on my behalf regarding the inappropriate comments he wrote in my performance review. Mr. Watson told me he requested HD to remove the comments "…for personal reasons…". Mr. Watson's comments were unnecessary to the performance review. His comments eluded to the situations surrounding this complaint. I find the comments are retaliatory, embarrassing, negative to my reputation, and a breach of confidentially (Enclosure A6).

6. Taken individually, Ms. Gafford's actions may not be held as inappropriate or causing a hostile work environment, but taken collectively clearly outlines targeted retaliation/harassment towards me over an extended period of time. Her preoccupation with my flexible schedule continued for over a year and caused me considerable pain and suffering during this time. Her recent application of core work hours, obviously knowing that my circumstance will not allow me to comply with this policy, appears directly targeted at me. As outlined in my original submission and in this addendum, Ms. Gafford continues a campaign of retaliation – forcing me to work with abusive supervisors, eliminating my opportunities for advancement, and now threating my employment by setting conditions she knows I cannot meet.

4